NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMCAST CABLE COMMUNICATIONS LLC, | |
| Plaintiff, | CIVIL NO. 06-5348(NLH) |
| v. | **OPINION** |
| MIKE SOTO, | |
| Defendant. | |

**APPEARANCES:**

Andrew Sklar, Esquire
411 East Route 70
Suite 200
Cherry Hill, NJ 08034

    Attorney for Plaintiff

**HILLMAN**, District Judge

    This matter comes before the Court upon motion by Plaintiff Comcast Cable Communications ("Comcast") for the entry of a default judgment against Defendant Mike Soto pursuant to Rule 55 of the Federal Rules of Civil Procedure for failure to plead or otherwise defend in this matter. For the reasons expressed below, the Court will grant Comcast's motion.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Comcast operates cable television systems, providing programming services to paying consumers.  Comcast subscribers purchase "Basic" or "Standard" tier packages for a set monthly rate and can add various "Premium" programming services for additional monthly charges of $13.99 to $16.99 per service. Comcast also offers "pay-per-view" programming, allowing subscribers to purchase individual movies, sporting events, or other entertainment for a "per event" fee, ranging from $4.00 to $49.99, in addition to the cost of the subscriber's regular monthly subscription.

Comcast prevents subscribers from receiving programming services for which they have not paid by encoding, or "scrambling," its signals.  Comcast provides subscribers who purchase programming with a "decoder" device, which decodes scrambled service so that programming can be viewed clearly on a television set.  Programming services that a customer has not purchased remain scrambled and unviewable.

According to Comcast, Defendant purchased bootleg "pirate" decoding equipment on or about December 26, 2000, April 2, 2001, and July 26, 2002 from Modern Electronics, Inc., for the purpose of circumventing the security functions of Comcast's scrambling technology to access to Comcast's "premium" and "pay-per-view"

2

programming services without payment.  Comcast filed a complaint against Defendant on November 8, 2006 seeking monetary damages and an injunction, pursuant to the Cable Communications Policy Act, 47 U.S.C. § 553, enjoining Defendant from purchasing or using any decoding equipment that enables him to intercept Comcast programming without payment.  Comcast served Defendant with the Summons and Complaint at his residence on November 17, 2006, and proof of service was filed on November 29, 2006. Defendant is not an infant or incompetent and is not presently in the military service of the United States.  As of December 7, 2006, Defendant failed to answer or otherwise defend, and Comcast requested the Clerk's Entry of Default, which was entered on December 22, 2006.  Comcast now seeks an entry of default judgment against Defendant.

## II.  DEFAULT JUDGMENT STANDARD

Under Federal Civil Procedure Rule 55, obtaining a default judgment is a two-step process.  First, when a defendant has failed to plead or otherwise respond, a plaintiff may request the entry of default by the Clerk of the Court.  Fed. R. Civ. P. 55(a).  After the Clerk has entered the party's default, a plaintiff may then obtain a judgment by default by either (1) asking the Clerk to enter judgment, if the judgment is a sum certain, or (2) applying to the Court.  Fed. R. Civ. P. 55(b).

In considering a motion for default judgment, the Court should accept as true the factual allegations of the Complaint, but need not accept the moving party's legal conclusions or allegations relating to the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); see also Comcast Cable Commc'ns v. Weigel, No. 05-2016, 2006 WL 2460652, at *2 (D.N.J. Aug. 22, 2006).  The Court need not accept the moving party's legal conclusions, because "[e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533 (D.N.J. March 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)).

## III. ANALYSIS

The present case follows many recent default judgments entered in this district involving unauthorized decoding of Comcast's cable television services.  Since the beginning of 2007 alone, at least five default judgments have been entered against defendants alleged to have stolen cable services, and those judgments included monetary damages, fees, costs and injunctive

4

relief.[1]  Those cases involve almost identical circumstances as
the case at bar, and after reviewing those decisions and the
controlling law, this Court adopts the analysis previously
applied in this district.

Section 553(a)(1) provides that "no person shall intercept
or receive or assist in intercepting or receiving any
communications service offered over a cable system, unless
specifically authorized to do so by a cable operator or as may
otherwise be specifically authorized by law."  47 U.S.C. §
553(a)(1).  Any person aggrieved by a violation of § 553(a)(1)
may bring a civil action in federal district court.  47 U.S.C. §
553(c)(1).  The district court may:

(1)   grant temporary or final injunctions on such terms
      as it may deem reasonable to prevent or restrain
      violations of subsection(a)(1)
(2)   award damages
(3)   direct the recovery of full costs, including
      awarding reasonable attorneys' fees to an
      aggrieved party who prevails. 47 U.S.C. §
      553(c)(2).

The court must calculate damages using one of two methods:
the prevailing party may recover its actual damages plus any

---

[1] See, e.g., Comcast Cable Commc'ns v. Bowers, No. 06-1664,
2007 WL 1557510 (D.N.J. May 25, 2007); Comcast Cable Commc'ns LLC
v. Kreie, No. 06-4481, 2007 WL 1101229 (D.N.J. Apr 10, 2007);
Comcast Cable Commc'ns LLC v. Virgili, No. 06-3421, 2007 WL
979884 (D.N.J. Apr 02, 2007); Comcast Cable Commc'ns v. Narcisi,
No. 06-3318, 2007 WL 895702 (D.N.J. Mar 20, 2007); Comcast Cable
Commc'ns v. Lopes, No. 06-3273, 2007 WL 608986 (D.N.J. Feb 23,
2007).

profits of the violator that are attributable to the violation of
section (a), or an award of statutory damages for all violations
involved in the action, in a sum of not less than $250.00 and not
more than $10,000.00, as the Court considers just. 47 U.S.C. §
553(c)(3)(A)(i-ii).

### A.   Whether Comcast has established a legitimate cause of action

Before awarding a default judgment, the Court must
determine whether the moving party's complaint establishes a
legitimate cause of action.  Asher, 2006 WL 680533, at *1 (citing
Wright, Miller, & Kane, § 2688, at 63).  Here, Comcast alleges
that on or about December 26, 2000, April 2, 2001, and July 26,
2002, Defendant violated the Cable Communications Policy Act by
purchasing "pirate" cable decoding equipment in order to
descramble Comcast's "premium" and "pay-per-view" programming
without payment.  47 U.S.C. § 553(a)(1).

Accepting the factual allegations of the Complaint as true,
the Court finds that Defendant violated the Act by intercepting
and descrambling Comcast's programming services without payment.
See id.  Accordingly, Comcast's Complaint established a
legitimate cause of action.

### B.   Whether Comcast is entitled to damages

Comcast argues that it is entitled to damages, and that a
maximum statutory damages award of $10,000.00 is appropriate in

6

this case.  Under 47 U.S.C. § 553(c)(3)(A), a court can award either the actual damages caused by a violation of the Cable Communications Policy Act, or statutory damages between $250.00 and $10,000.00.[2]  Comcast suggests that the amount of stolen programming exceeds the statutory limit, but admits that difficulties in proving actual damages forces Comcast to rely on statutory damages to recover its losses.

In determining whether the statutory maximum award of damages is appropriate, this district has used three methods.  Some courts have focused on the length of time that a defendant had possessed descrambling devices.  See Comcast Cable Commc'ns LLC v. Virgili, No. 06-3421, 2007 WL 979884, at *3 (D.N.J. Apr 02, 2007) (finding that the period relevant to consideration of damages equals the number of months between defendant's purchase of equipment and filing of the complaint).  For example, in Comcast Cable Commc'ns v. Lopes, No. 06-3273, 2007 WL 608986 (D.N.J. Feb 23, 2007), a defendant possessed two descrambling devices for a total of fifty-seven months.  Although it was impossible to quantify the exact amount of damages, the fact that the defendant possessed multiple devices for that length of time suggested that a full $10,000.00 award was appropriate.

---

[2] 42 U.S.C. § 553(c)(3)(A)(ii) limits statutory damages to a single award of $10,000.00 for "all violations" of the Act.

Other courts have calculated the award in terms of a monthly amount to gain a perspective of whether the maximum award is proper.  For example, in <u>Comcast Cable Commc'ns LLC v. Kreie</u>, No. 06-4481, 2007 WL 1101229 (D.N.J. Apr 10, 2007), the court divided $10,000.00 over thirty-three months that the defendant possessed descrambling equipment.  The court held that a $303.00 monthly award, although substantial, was an amount of programming that plausibly may have been consumed, given the cost of Comcast's premium and pay-per-view services.[3]

Finally, the court in <u>Weigel</u>, 2006 WL 2460652 at *5 found that the plaintiff was entitled to damages in the amount of $250.00 per month.  It is unclear how the court came to that specific number, but it stated that the amount was imposed to prevent the defendant from reaping any benefits by failing to appear before the court.

Here, Comcast argues that the statutory maximum is appropriate because even though it is impossible to know exactly how many services Defendant pirated, it is conceivable that a person in Defendant's position could access $5,000.00 or more in premium and pay-per-view programming per month.  This argument is untenable.  Following the line of similar cases in this district,

---

[3] <u>See also</u> <u>Virgili</u>, 2007 WL 979884, at *3 (holding that it was entirely plausible that defendant may have consumed $167.00 of services per month).

this Court agrees that "it is difficult to fathom how an
individual might reasonably consume $5,000.00 worth of cable
television services on a monthly basis." Weigel, 2007 WL
2460652, at *4.  Indeed, "those who steal cable television
presumably must sleep, eat, bathe, go to work, shop, and
otherwise go about their daily lives." Id. (quoting Charter
Commc'n Entm't I, LLC v. Burdulis, 367 F. Supp. 2d 16, 26 (D.
Mass. 2005)).

Even with that consideration in mind, a $10,000.00 award is
appropriate here, albeit for different reasons than those
expressed by Comcast.  First, $10,000.00 has been recognized in
this district as an appropriate amount to serve as a deterrent to
those who unlawfully descramble cable services. Comcast Cable
Commc'ns v. Cabrera, No. 04-3431, 2005 WL 3544698, at *2 (D.N.J.
Dec 28, 2005).  Further, a $10,000.00 award is proper when using
any of this district's three approaches to the calculation of
damages.  Under the Lopes approach, which focused on the length
of a defendant's possession of descrambling equipment, the
maximum award is proper considering that Defendant's possession
of multiple devices dated as far back as December 26, 2000.
Next, $10,000.00 is a proper amount of damages if the Kreie and
Virgili approach was followed.  Under this approach, the total
maximum award is converted into a monthly penalty.  Here, the

9

full $10,000.00 statutory award would be divided by a period of seventy months, from December 26, 2000 (first day of Defendant's possession) through November 8, 2006 (date that Plaintiff's Complaint was filed), which totals $142.86 per month. This amount is well below the $303.00 monthly figure calculated in Kreie. Finally, if Weigel were adopted to award damages to Comcast in the amount of $250.00 per month, the total would far exceed $10,000.00. Thus, in consideration of the need for deterring such piracy, and regardless of which approach is followed, an award of $10,000.00 is proper.

### C.   Whether Comcast is entitled to costs and fees

The Cable Communications Policy Act authorizes the Court to award a successful plaintiff full costs, including reasonable attorneys' fees. 47 U.S.C. § 5539(c)(2)(C). Comcast submitted a certification of counsel setting forth the costs and attorneys' fees incurred in litigating this case, which the Court finds to be reasonable.[4] To determine attorneys' fees, "the Court multiplies the 'number of hours reasonably expended on the litigation' by a 'reasonable hourly rate.'" Virgili, 2007 WL 979884 at *3 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Plaintiff identifies three time-keepers in this

---

[4] In addition to attorneys' fees, the certification of counsel identified $350.00 in filing fees and $74.06 for process service fees and other costs.

particular matter, who billed a total of thirteen and one half
hours.  Multiplying each time-keeper's time by the billing rate,
the certification calculates total attorneys' fees of $2,242.50.
A review of the itemized bill, which identifies the tasks
completed by each time-keeper, indicates that the hours logged
are not "excessive, redundant, or otherwise unnecessary."
Hensley, 461 U.S. at 434.  Accordingly, Comcast is entitled to
$2,242.50 in attorneys' fees, $350.00 in filing fees and $74.06
for process service fees.

> **D.   Whether Comcast is entitled to injunctive relief**

The Cable Communications Policy Act also authorizes the
Court to grant final injunctions as it may deem reasonable to
prevent or restrain further violations of subsection (a)(1).  47
U.S.C. § 5539(c)(2)(A).  A plaintiff seeking a permanent
injunction must demonstrate: (1) that the plaintiff has suffered
an irreparable injury; (2) that remedies available at law, such
as monetary damages, are inadequate to compensate for that
injury; (3) that, considering the balance of hardships between
the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be harmed by a permanent
injunction.  eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837,
1839 (2006).

In this instance, all four factors support the issuance of a permanent injunction. As to the first factor, this district has already recognized that "there exists a significant risk that defendant may continue to [unlawfully access programming] without repercussion, quite literally causing [Comcast] irreparable injury." Kreie, 2007 WL 1101229 at *4. Considering Comcast's own admission regarding the difficulties of the detection and measurement of pirated programming, there is legitimate concern that Defendant will continue to violate the Act.

These difficulties also support injunctive relief as to the second factor. Enjoining Defendant from future use of descrambling equipment decreases the likelihood of future violations, whereas remedies at law are more retrospective in nature and will not necessarily affect Defendant's future ability to utilize descrambling equipment.

As to the third factor, a balancing of hardships weighs heavily in favor of injunctive relief. Defendant's conduct results in lost revenue for Comcast and expenses borne by paying subscribers. The only hardship for Defendant would be the loss of unauthorized access to programming services for which he does not pay. There is no legitimate purpose or justification for Defendant's possession of descrambling equipment. Finally, as to the fourth factor, the public certainly would not be harmed by an

injunction enjoining Defendant from continuing to pirate Comcast's programming services.  Accordingly, Comcast is entitled to injunctive relief.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will enter default judgment against Defendant in the amount of $10,000.00 in statutory damages, $2,242.50 in attorneys' fees, and $424.06 in costs for a total of $12,666.56.  The Court also awards Comcast prejudgment interest.  Additionally, Defendant is enjoined from committing or assisting in the commission of any further violations of 47 U.S.C. § 553(a)(1).


Date: July 16, 2007              s/ Noel L. Hillman

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J

13